United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re

TAMALPAIS BANCORP,
f/k/a EPIC BANCORP,                                No. C 11-00076 JSW

      Debtor.

_____/     **ORDER GRANTING MOTION TO**
                                              **WITHDRAW REFERENCE TO**
LINDA S. GREEN, in her capacity as Chapter    **BANKRUPTCY COURT**
7 trustee for TAMALPAIS BANCORP, f/k/a
EPIC BANCORP,

      Plaintiff,

  v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as receiver
for Tamalpais Bank,

      Defendant.

_____/

     Now before the Court is the motion to withdraw the reference to the bankruptcy court

pursuant to 28 U.S.C. § 157(d) filed by defendant Federal Deposit Insurance Corporation

("FDIC"). This motion is fully briefed and ripe for decision. The Court finds this motion is

suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). Having carefully

considered the parties' papers and the relevant legal authority, the Court hereby GRANTS

FDIC's motion to withdraw the reference.

*//*

*//*

**United States District Court**
For the Northern District of California

**BACKGROUND**

Two related entities stand at the core of this motion: Tamalpais Bancorp, f/k/a Epic Bancorp ("Debtor"), and its subsidiary, Tamalpais Bank ("Bank"). The relevant facts are undisputed. On April 16, 2010 the California Department of Financial Institutions closed Bank and appointed FDIC as its receiver. On September 24, 2010 Debtor filed a Chapter 7 bankruptcy proceeding, and Linda S. Green ("Trustee") was subsequently appointed as trustee for the Debtor's bankruptcy estate.

The present motion relates to an adversary proceeding, brought in the bankruptcy court by Trustee against FDIC on November 30, 2010, seeking a declaratory judgment regarding ownership of certain tax refunds ("Refunds"). From 1997 to 2009, Debtor filed consolidated tax returns on behalf of itself, Bank, and another subsidiary which is not a party to this action. Due to changes made to the Internal Revenue Code in 2009, FDIC was able to file an amended 2009 tax return on behalf of Bank and secure Refunds in the amount of $9.7 million. In the adversary proceeding that is the focus of this motion, Trustee asserts that the Refunds belong to Debtor's bankruptcy estate rather than Bank's receivership pursuant to a 2005 Tax Sharing Agreement ("TSA") between Debtor and Bank. FDIC now argues that, because its defense in the adversary proceeding will involve federal non-bankruptcy law, this Court should withdraw the reference to the bankruptcy court as to the adversary proceeding.

**ANALYSIS**

**A.    Standard of Review.**

District courts, rather than bankruptcy courts, have original jurisdiction over all bankruptcy matters. 28 U.S.C. § 1334(b). However, district courts may refer all bankruptcy matters to a bankruptcy court. 28 U.S.C. § 157(a). 28 U.S.C. § 157(d) provides that, in certain circumstances, a referred case may be transferred from the bankruptcy court back to the district court by withdrawing the reference. Withdrawal can be mandatory or permissive. 28 U.S.C. § 157(d). The burden of persuasion is on the party seeking withdrawal. *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.*, 355 B.R. 214, 218 (D. Haw. 2006).

2

**United States District Court**
For the Northern District of California

1

**B.      Mandatory Withdrawal.**

2          Mandatory withdrawal of a reference is governed by the second sentence of Section

3  157(d): "The district court shall, on timely motion of a party, so withdraw a proceeding if the

4  court determines that resolution of the proceeding requires consideration of both title 11 and

5  other laws of the United States regulating organizations or activities affecting interstate

6  commerce."  28 U.S.C. § 157(d).  The Ninth Circuit has not squarely addressed mandatory

7  withdrawal, but other circuits have held that "mandatory withdrawal is required only when

8  [non-title 11] issues require the interpretation, as opposed to mere application, of the non-title

9  11 statute, or when the court must undertake analysis of significant open and unresolved issues

10  regarding the non-title 11 law."  *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir.

11  1996); *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990).  Courts within

12  the Ninth Circuit have largely adopted this approach.  *See, e.g.*, *In re Upp*, Nos. C 10-01934 SI,

13  3:10-cv-00204-SI, 3:10-cv-01149-SI, 3:10-cv-02559-SI, 2010 WL 5387609, at *1 (N.D. Cal.

14  Dec. 21, 2010); *Siegel v. Caldera*, No. CV 10-00179-RGK, 2010 WL 1136220, at *1 (C.D. Cal.

15  Mar. 19, 2010); *In re Creekside Vineyards, Inc.*, No. CIV. 2:09-2273 WBS EFB, 2009 WL

16  3378989, at *4 (E.D. Cal. Oct. 19, 2009); *In re Roman Catholic Bishop of San Diego*, No.

17  07cv1355-IEG (RBB), 2007 WL 2406899, at *1-2 (S.D. Cal. Aug. 20, 2007).  Under this

18  approach, a movant must do more than merely suggest that novel issues of law could possibly

19  arise in a bankruptcy proceeding.  *Vicars Ins.*, 96 F.3d at 954-55.

20          At least two additional requirements have been identified by courts in the Ninth Circuit.

21  First, mandatory withdrawal is inappropriate where the asserted non-bankruptcy laws do not

22  relate to interstate commerce.  *In re Roman Catholic Bishop of San Diego*, 2007 WL 2406899 at

23  *2.  Second, only federal *law*, rather than non-binding policy, can trigger mandatory

24  withdrawal.  *Siegel*, 2010 WL 1136220 at *3.

25          FDIC first contends that mandatory withdrawal is required here because its affirmative

26  defenses implicate the Financial Institutions Reform, Recovery and Enforcement Act of 1989

27  ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183 (1989).  FDIC cites one particular decision by a

28  district court within the Ninth Circuit in support of this proposition: "cases involving FIRREA

1    require mandatory withdrawal of the reference." *CM Capital Servs. LLC v. Stewart Title of*

2    *Nevada*, No. 2:10-CV-317 JCM (LRL), 2010 WL 4606523, at *2 (D. Nev. Nov. 5, 2010) (*citing*

3    *In re Lubin*, 411 B.R. 801, 804 (N.D.Ga.2009)).  However, the weight of authority places

4    emphasis on what *issues* are to be addressed rather than what *statute*s are involved.  To the

5    extent that the *CM Capital Services* court granted mandatory withdrawal simply because a

6    particular federal statute was to be applied, albeit mechanically, to the facts of the case, that

7    court represents the minority position.  The mere presence of FIRREA-based defenses does not

8    satisfy FDIC's burden of identifying novel issues of law that are likely to arise in the adversary

9    proceeding.  *See*, *e.g.*, *Siegel*, 2010 WL 1136220 at *2-4 (holding that mandatory withdrawal

10   was inappropriate despite the assertion of FIRREA-based claims).

11         FDIC next argues that it is entitled to mandatory withdrawal because it intends to assert

12   no fewer than seven affirmative defenses based on federal non-bankruptcy law.  There is no

13   authority for FDIC's assertion that "the sheer number of non-bankruptcy federal laws at issue in

14   this case satisfies the requirement that consideration of other federal law be 'substantial.'"

15   (Reply in Further Support of Motion to Withdraw the Reference ("Reply") at 7.)  Rather, FDIC

16   must show that at least one of the asserted defenses will "require the interpretation, as opposed

17   to mere application, of [a] non-title 11 statute."  *Vicars Ins.*, 96 F.3d at 954.

18         FDIC fails to demonstrate that any particular defense would require interpretation or

19   analysis of unresolved issues of federal non-bankruptcy laws in the adversary proceeding.

20   Indeed, it characterizes its primary defense, *i.e.*, that the bankruptcy court lacks jurisdiction to

21   hear Trustee's claims under 18 U.S.C. § 1821(d), as based on "well-settled case law" that

22   renders the outcome "absolutely clear."  (Motion to Withdraw the Reference ("Mot.") at 2; *see*

23   *also* Mem. of Law in Support of Motion to Withdraw the Reference ("Mem.") at 7 (asserting

24   that the circuits are unanimous on the issue).)  Moreover, FDIC represents that almost all of its

25   asserted defenses are dictated by existing, established law.  (*See*, *e.g.*, Mem. at 9, 12.)  The lone

26   exception is its defense based on 12 U.S.C. § 1821(j), as to which FDIC identifies numerous

27   cases holding in its favor and never suggests that a court would need to do more than

28

United States District Court
For the Northern District of California

4

United States District Court

For the Northern District of California

1    mechanically apply those cases here.  (Mem. at 10-11.)  FDIC thus fails to demonstrate that

2    novel issues of federal bankruptcy law are likely to arise.  *See Vicars Ins.*, 96 F.3d at 954-55.

3           FDIC further contends that mandatory withdrawal is appropriate because a court will be

4    required to decide "whether FIRREA controls over the Bankruptcy Code."  (Reply at 1.)

5    However, FDIC previously indicated that Trustee's failure to exhaust administrative remedies

6    under FIRREA deprives a court of jurisdiction to hear claims against FDIC.  (Mem. at 8.)  By

7    arguing that the Court lacks jurisdiction to hear Trustee's claims, FDIC has failed to

8    demonstrate the likelihood that unresolved issues of whether FIRREA controls over the

9    Bankruptcy Code will arise in the adversary proceeding.  *See Vicars Ins.*, 96 F.3d at 954-55

10   ("speculative" concerns that RICO claims "might involve novel issues" were insufficient to

11   trigger mandatory withdrawal).

12          Because FDIC has failed to identify any novel issues of federal non-bankruptcy law that

13   are likely to arise in the adversary proceeding, the Court concludes that mandatory withdrawal

14   is not appropriate in this case.

15   **C.      Permissive Withdrawal.**

16          Permissive withdrawal of a reference is governed by the first sentence of Section 157(d):

17   "The district court may withdraw, in whole or in part, any case or proceeding referred under this

18   section, on its own motion or on timely motion of any party, for cause shown."  28 U.S.C.

19   § 157(d).  "In determining whether cause exists, a district court should consider the efficient use

20   of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the

21   prevention of forum shopping, and other related factors."  *Sec. Farms v. Int'l Bhd. of Teamsters,*

22   *Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) (*citing In re Orion*

23   *Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir.1993)).

24          "[C]haracterization of the claims as core or non-core [under 28 U.S.C. § 157(b)] is

25   useful before considering the [*Sec. Farms*] factors."  *Hawaiian Airlines*, 355 B.R. at 223.

26   "Actions that do not depend on bankruptcy laws for their existence and that could proceed in

27   another court are considered 'non-core.'"  *Sec. Farms*, 124 F.3d at 1008 (*citing In re Castlerock*

28   *Props.*, 781 F.2d 159, 162 (9th Cir. 1986)).  While the list of core proceedings provided in 28

U.S.C. § 157(b)(2) is nonexhaustive, those provisions must be read narrowly so as to avoid "constitutional problems arising from having Article I judges issue final orders in cases requiring an Article III judge, without a party's consent." *Dunmore v. United States*, 358 F.3d 1107, 1115 (9th Cir. 2004); *see also Castlerock Props.*, 781 F.2d at 162 ("[A] court should avoid characterizing a proceeding as 'core' if to do so would raise constitutional problems."). "Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law . . . ." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 584 (1985) (characterizing the holding of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982)). Thus, while a claim arising from a post-petition contract regarding the property of the bankruptcy estate is a core proceeding, a claim arising from a pre-petition contract is a non-core proceeding even if the debtor is a party to the contract at issue. *Compare In re Harris*, 590 F.3d 730, 740-41 (9th Cir. 2009) *with In re Ray*, 624 F.3d 1124, 1131-33 (9th Cir. 2010).

Trustee frames the adversary proceeding as an action to determine the nature and extent of property of the bankruptcy estate under 11 U.S.C. § 541(a), which Trustee argues is a core proceeding under *In re Kincaid*, 917 F.2d 1162, 1165 (9th Cir. 1990). FDIC, however, characterizes Trustee's claim as one that merely seeks to determine ownership of certain funds pursuant to a contract and thus fits *Sec. Farms*' definition of non-core proceedings. The fact that the TSA was enacted years before Debtor filed for bankruptcy demonstrates that Debtor's cause of action under the TSA exists independently of bankruptcy law. While Trustee's claim will have a profound impact on the bankruptcy proceedings, a declaratory judgment action regarding ownership of the Refunds involves only a traditional contract dispute that could have been brought even if Debtor had never filed for bankruptcy. Trustee's claim is therefore non-core.

Trustee's reliance on *Kincaid* is misplaced. The underlying issue in *Kincaid* was whether certain of the debtor's future interests in a deferred salary plan were properly included in debtor's bankruptcy estate. 917 F.2d at 1164-65. There was no question that the interests at issue belonged to the debtor; rather, the question was whether the debtor's future interests were

part of her bankruptcy estate under 11 U.S.C. § 541(a).  *Id.*  The primary issue was considered a core issue because resolution of the claim hinged on interpretation of Section 541 of the Bankruptcy Code.  *See id.* at 1165-66.  By contrast, the controlling question in the present case is whether the Refunds belong to Debtor under the TSA, and the bankruptcy-related question of whether 11 U.S.C. § 541(a) includes the Refunds in Debtor's bankruptcy estate is only secondary to that threshold inquiry under contract law.  Like the claims that the *Sec. Farms* court held to be non-core, Trustee's claim does "not depend on Title 11 . . . but [is] in [bankruptcy] court only because of [its] potential impact on the administration of [the bankruptcy] estate."  124 F.3d at 1008.

Trustee also cites numerous bankruptcy court decisions for the proposition that determination of the ownership of property, when performed in the context of a bankruptcy proceeding, is a core proceeding.  However, the recent Ninth Circuit cases of *Harris* and *Ray* control over the cases cited by Trustee.  Accordingly, Trustee's pre-petition, TSA-based claim to the Refunds is a non-core claim under binding precedent.

While a bankruptcy court may hear certain non-core issues, its findings of fact and conclusions of law on such issues are subject to de novo review by a district court absent consent of both parties.  28 U.S.C. § 157(c).  Because FDIC does not consent here, any findings of the bankruptcy court as to ownership of the Refunds will be subject to de novo review.  Such concerns prompted the *Sec. Farms* court to note that judicial efficiency and costs were best served by withdrawing the reference so that the district court could address the claims in a single proceeding.  124 F.3d at 1008-09.  Failure to withdraw the reference at this stage could lead to a future appeal in which a district court will be tasked with reviewing the bankruptcy court's decision de novo.  The Court therefore concludes that (1) judicial resources would be most efficiently used by withdrawing the reference, and (2) unnecessary delay and costs to the parties can be avoided by withdrawing the reference.

The parties each accuse one another of engaging in forum shopping.  However, as in *Sec. Farms*, neither denying nor granting FDIC's motion will facilitate forum shopping here because a district court will ultimately need to address the issues, whether initially or on de

novo review of the bankruptcy court.  The prevention of forum shopping neither supports nor opposes withdrawal in the present motion.  *See Sec. Farms*, 124 F.3d at 1009.

Because the primary claim at issue here is non-core, the Court concludes that the *Sec. Farms* factors render permissive withdrawal appropriate.

**CONCLUSION**

For the reasons set forth above, FDIC's motion to withdraw the reference to the bankruptcy court as to the adversary proceeding is GRANTED.  All further proceedings in this adversary action shall be held before this Court.

**IT IS SO ORDERED.**

Dated: March 21, 2011

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

8